**Rahel A. DEMISSIE, Appellant**

v.

**STARBUCKS CORPORATE OFFICE AND HEADQUARTERS,**
**Appellee**

**No. 15-7082**
**Consolidated with 15-7101, 15-7111**
**September Term, 2016**

United States Court of Appeals,
District of Columbia Circuit.

Filed On: May 12, 2017

Rahel A. Demissie, Pro Se

Stacey Recht Eisenstein, Attorney, James Edward Tysse, Esquire, Attorney, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, for Defendant-Appellee

Lauren R. Jackson, Karla Mari McKanders, Howard University School of Law, Washington, DC, for Appointed Amicus Curiae for Appellant Karla Mari McKanders

Before: Garland, Chief Judge, Griffith, Circuit Judge, and Edwards, Senior Circuit Judge.

## JUDGMENT

Per Curiam

This appeal from a judgment of the United States District Court for the District of Columbia was presented to the court, and briefed and argued by counsel. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. See D.C.

Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the district court's order enforcing the parties' oral agreement be **AFFIRMED.**

Rahel Demissie contends that during the three years she worked for Starbucks Corporation, she never received a performance review and so never earned a raise, while her colleagues regularly received both. When she raised the issue with human resources, her managers reduced her hours and told her she could no longer work at the same Starbucks store as her sister. As a result, Demissie filed charges with the U.S. Equal Employment Opportunity Commission, claiming that Starbucks had discriminated against her based on her Ethiopian heritage and retaliated against her for complaining about her managers. When the Commission dismissed Demissie's charges, she sued in federal district court.

The court referred the case to a magistrate judge to handle settlement negotiations. At the parties' fourth meeting, on November 6, 2014, they discussed the terms of a settlement, including an award for Demissie. Weeks later, Demissie said that she did not consider herself bound by those terms and would press on with litigation. Starbucks, arguing that the parties' oral agreement on November 6 was binding, sought an order enforcing that agreement, which the district court issued. Demissie now appeals.

Under the law of the District of Columbia, where the negotiations occurred, an oral agreement is enforceable if (1) it covers all material terms and (2) the parties intend to be bound by it. *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995). On both issues, we review the district court's factual findings for clear error and its legal conclusions de

novo. *Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1249 (D.C. Cir. 2007).

Materiality is about the core content of the parties' obligations under an agreement, and not the precise way that the parties are to meet those obligations. *See Eastbanc, Inc. v. Georgetown Park Assocs. II*, 940 A.2d 996, 1003 (D.C. 2008). Here the only dispute is whether the question of how to classify Demissie's settlement award for tax purposes was "material" to the parties' agreement. Demissie hoped to classify the whole award as damages so as to minimize her tax liability; Starbucks wanted some of the money treated as back-pay. The district court found that the award's tax treatment was not a material term, and we see no clear error.

Demissie raised the tax issue with her own and opposing counsel only after shaking hands with Starbucks' counsel on their November 6 deal; that fact counts against viewing this issue as material. *See Blackstone v. Brink*, 63 F.Supp.3d 68, 77 (D.D.C. 2014) (citing *Dyer v. Bilaal*, 983 A.2d 349, 358 (D.C. 2009)). Moreover, on the district court's fair reading of the record, Demissie did not renege on the deal immediately after disagreement arose over the tax issue. She reneged only when she learned that keeping her agreement to resign might weaken a workers' compensation claim against Starbucks. That timing undermines any suggestion that the tax issue was a key part of the deal for Demissie, rather than a detail to be worked out "in the course of [the parties'] performance," which was thus not material. *Eastbanc*, 940 A.2d at 1003 (citing Restatement (Second) of Contracts § 34 (1981)).

Finally, it is also telling that not much money was at stake in the award's tax treatment. It was clear all along that Demissie would have to pay *some* taxes on her award. The only issue was how much of the award would be subject to FICA and Medicare taxes, which are paid on back-wages but not damages. Under Starbucks' compromise with Demissie's counsel, more than 90% of her award *would* have been classified as damages. Had Demissie gotten her wish to have the last ten percent also treated as damages, she would have kept only $73 more out of an award that exceeded $10,000. The relative insignificance of this difference further suggests that the tax issue was not material. So the district court did not clearly err in finding that the parties' November 6 oral agreement covered all material terms.

The next question is whether the parties intended to be bound by that agreement. Courts must find that parties lack this intention if "either party knows or has reason to know that the other party regards the agreement as incomplete." *Perles*, 473 F.3d at 1249 (quoting Restatement (Second) of Contracts § 27 cmt. b (1981)). On the other hand, parties may intend to be bound even before settling on the "exact language of [a] written settlement agreement." *Varga v. Baker*, No. 92-5064, 1993 WL 20073, at *1 (D.C. Cir. Jan. 5, 1993). In general, to divine the parties' intent, a court should look to their written materials, words, and actions, including their behavior after the oral agreement. *See Miller v. Holzmann*, 471 F.Supp.2d 122, 124-25 (D.D.C. 2007).

Demissie argues that the parties' dispute over the tax issue in emails sent soon after the November 6 meeting proves that the parties did not intend to be bound by the deal they discussed that day. In rejecting this claim, the district court relied on the following findings: Shortly before their November 6 meeting, Demissie's counsel wrote to Starbucks' counsel saying that Demissie would agree to Starbucks' four conditions for a deal so long as Starbucks agreed to a certain settlement amount. Starbucks rejected the amount that Dem-

issie first requested, but the settlement's value remained the focus of their negotiations. Once the parties resolved that issue on November 6, the magistrate judge's law clerk (who oversaw the parties' meeting that day on the magistrate judge's behalf) said "[w]e have a deal." Demissie and her counsel then shook hands with Starbucks' counsel. J.A. 168. The two sides "thanked each other for being flexible," agreed to stay litigation, and decided that Starbucks' counsel would draft the agreement. *Id.*

The district court also relied on one of the facts behind its conclusions on materiality: namely, that Demissie did not renege on the agreement because of the tax issue that she now says kept her from ever regarding the deal as complete. Again, what caused her to renege was learning that her resignation would weaken the workers' compensation claim that she had fought hard to remain free to pursue. Yet "belated objections" to the agreement's terms don't tell us whether Demissie originally meant to be bound. *See Blackstone,* 63 F.Supp.3d at 83. Thus, the district court reasonably concluded that the parties intended on November 6 to be bound by their agreement, and that neither had reason to believe otherwise.

Demissie's court-appointed amicus makes one more argument: that we should reverse the district court's order because the magistrate judge handling the parties' negotiations flouted Federal Rule of Civil Procedure 16(a) by allowing her law clerk to oversee the meeting where the deal was finalized. But this argument was not raised below, so it is waived. The argument is waived even though it originated with Demissie's court-appointed amicus, who was not on the case below. *See Elliott v. U.S. Dep't of Agric.,* 596 F.3d 842, 851 (D.C. Cir. 2010).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).